NUMBER 13-05-126-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CITY OF WESLACO, TEXAS, ET AL., Appellants


v.


CARL L. BORNE, ET AL., Appellees

 


On appeal from the 206th District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Yañez, Castillo, and Garza


Opinion by Justice Garza
 

On August 22, 2005, we issued a memorandum opinion dismissing this case for lack
of jurisdiction. See City of Weslaco v. Borne, No. 13-05-126-CV, 2005 Tex. App. LEXIS
6783 (Corpus Christi, August 22, 2005, no pet. h.). Appellees filed a motion for rehearing
on September 6, 2005. Shortly thereafter, appellants filed a motion for correction of
judgment, asking the Court to change its judgment to indicate that their issues challenging
the trial court's subject matter jurisdiction had been sustained. On January 11, 2006, while
appellees' motion for rehearing was still pending, appellees filed an "emergency motion for
temporary injunctive order or for remand to consider interim relief." Subsequently, this
Court withdrew its prior opinion and ordered a rehearing. We now issue the following
opinion reversing the trial court's order denying appellants' pleas to the jurisdiction. In
doing so, we dismiss as moot appellees' emergency motion and appellants' motion for
correction of judgment. 

Background 

This case is essentially a landlord-tenant dispute. It involves a mobile home park
known as the Lakeview Senior Mobile Home Park ("Lakeview Park"). Appellants own and
operate Lakeview Park. Appellees are current and former residents of Lakeview Park who
claim that appellants are wrongfully forcing them from their homes. 

The dispute began when appellees learned of appellants' plans to transfer
ownership of Lakeview Park to the Texas Parks and Wildlife Department for development
as a birding center. Appellees are against the proposal because Texas Parks and Wildlife
will not accept the property for development if people continue to reside there. Appellees
understand this condition to mean that appellants will ultimately force them from their
homes to carry out their plan of developing a birding center. 

Before any transfer of ownership could occur, appellees sued appellants for fraud,
negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, breach
of contract, statutory fraud in a real estate transaction, statutory violations of Chapter 94
of the Texas Property Code, and permanent injunctive relief preventing appellants from
"selling, transferring, encumbering, leasing, or otherwise disposing of the Lakeview
property without protecting or allowing for the plaintiffs' legal rights to remain in the park
for as long as they can care for themselves." 

Appellants answered the lawsuit and filed special exceptions. They also filed pleas
to the jurisdiction, raising ripeness and governmental immunity as grounds for dismissing
appellees' claims without a trial on the merits. The trial court denied the pleas to the
jurisdiction and this interlocutory appeal ensued. See Tex. Civ. Prac. & Rem Code Ann.
§ 51.014(a)(8) (Vernon 2006).

Before addressing the merits of the appeal, we pause to specify the identities and
roles of the three appellants before this Court: (1) the City of Weslaco owns Lakeview
Park; (2) the Weslaco Development Committee, Inc. ("WDC") previously owned and
operated Lakeview Park; and (3) and the Economic Development Corporation of Weslaco
("EDC") is a successor corporation to WDC and currently operates Lakeview Park in behalf
of the City of Weslaco. Wherever possible, we will refer to appellants collectively; however,
at times, it will be necessary to discuss their roles in this litigation individually.

Standard of Review 

A trial court's ruling on a plea to the jurisdiction is a question of law subject to de
novo review. Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855
(Tex. 2002). In determining whether jurisdiction exists, we accept all allegations in the
pleadings as true. See City of San Antonio v. Butler, 131 S.W.3d 170, 174 (Tex.
App.--San Antonio 2004, pet. denied). The plaintiff has the burden to plead facts
affirmatively demonstrating the court's jurisdiction. Id. Therefore, we may consider
evidence presented to the trial court to the extent necessary to determine the jurisdictional
facts. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000). 

I. Ripeness

In our prior opinion, we concluded that appellees' claims against appellants were
not ripe and accordingly sustained the seventh issues raised in appellants' briefs. See City
of Weslaco v. Borne, No. 13-05-126-CV, 2005 Tex. App. LEXIS 6783 (Corpus Christi,
August 22, 2005, no pet. h.). On rehearing, we begin our analysis by revisiting that
holding. 

Ripeness is one of several categories of justiciability. Perry v. Del Rio, 66 S.W.3d
239, 249 (Tex. 2001). The doctrinal purpose of ripeness is to prevent premature
adjudication. See Patterson v. Planned Parenthood, 971 S.W.2d 439, 442 (Tex. 1998). 
The issue of ripeness thus questions when a particular action may be brought. Id. 
Ripeness asks whether the facts have developed sufficiently so that an injury has occurred
or is likely to occur. Id. The focus of the ripeness inquiry is therefore on whether the case
involves uncertain or contingent future events that may not occur as anticipated, or indeed
may not occur at all. Id. 

Ripeness involves both jurisdictional and prudential concerns. See id. at 442-43. 
Jurisdictionally, ripeness operates to prevent Texas courts from issuing judicial advisory
opinions, which are constitutionally prohibited. See Tex. Const. art. II, § 1 (separation of
powers), art. IV, §§ 1, 22 (attorney general is part of the executive department and is
empowered to issue advisory opinions to the governor and other officials); Tex. Ass'n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993) (holding that separation of
powers prohibits courts from issuing advisory opinions, a function of the executive
department). Ripeness also has a pragmatic, prudential aspect that is directed toward
conserving judicial time and resources for real and current controversies, rather than
abstract, hypothetical, or remote disputes. Patterson, 971 S.W.2d at 443. 

Appellants have filed two appellate briefs in this case: one for the City of Weslaco
and the other for WDC and EDC. The seventh issue raised in the City of Weslaco's
appellate brief makes the following argument on ripeness: 

The trial court erred in denying the Appellant's Pleas to the Jurisdiction
because the matter before the trial court lacked "ripeness" in that Appellees
are basing their claims on a contingent or hypothetical event, (i.e. the breach
of an alleged oral lease through their eviction), which had not happened at
the time the lawsuit was filed, at the time the Pleas were urged or at the time
the Pleas were denied.


Appellant City of Weslaco's Appellate Brief p. 20. 

The seventh issue in the brief filed by WDC and EDC also argues that appellees'
claims are not ripe for review: 

Appellees' case is based entirely upon hypothetical facts and events that
have not come to pass. Appellees complained that, on December 10, 2003,
the mayor of Weslaco informed several of the Appellees of the City's
intention to breach purported promises to allow Appellees to live perpetually
at the Lakeview Park. The Appellees admit in the [live petition] . . . that the
City subsequently took the position that the mayor's statement may not have
been an official statement of the City's intentions. No defendant in this case
has actually acted to evict any of the Appellees. The alleged announcement
by the mayor was subsequently called into question, thus rendering the
statement an example of a hypothetical fact: hypothetically the City of
Weslaco intends to evict Appellees. Appellees' case is based entirely on
what might happen to them at some point in the future. 


Appellate Brief of Appellants WDC & EDC p.15.

The Texas Supreme Court has held that a determination of ripeness should not
necessarily be limited to the facts and circumstances of the case as they existed at the
time the lawsuit was filed. See Del Rio, 66 S.W.3d at 252; Patterson, 971 S.W.2d at 442. 
 A claim's lack of ripeness when filed is not a jurisdictional infirmity requiring dismissal if
the case has subsequently matured. Del Rio, 66 S.W.3d at 252. 

In the time between the issuance of our original opinion and the date on which we
granted rehearing, appellees supplemented the record with 15 affidavits demonstrating that
appellants have taken measures such as disconnecting water and electrical utilities to force
appellees from their homes. The supplemented record also shows that eviction
proceedings have been commenced by appellants in justice court to remove appellees
from Lakeview Park. Based on these facts and circumstances, we conclude that
appellants' ripeness arguments to this Court have become untenable. The developments
in this case, specifically, the post-appeal efforts to evict appellees from their homes,
demonstrate that this case presents a real, live controversy that is not dependent on
uncertain or contingent future events. Accordingly, we overrule appellants' issues
challenging the ripeness of the claims against them. 

II. Governmental Immunity 

In their remaining issues, appellants contend that the trial court erred in denying
their pleas to the jurisdiction based on governmental immunity. (1) According to appellants,
the claims filed by appellees cannot be maintained because appellants enjoy governmental
immunity to suit. In contrast, appellees maintain that governmental immunity is no bar to
suit because the complained-of actions involve proprietary functions and not governmental
functions for which there is immunity. In addition, appellees also contend that
governmental immunity has been statutorily waived as to all three appellants. They cite
sections 51.013, 51.033, and 51.075 of the Texas Local Government Code as a waiver of
the City of Weslaco's immunity to suit, and they cite section 23(a)(9) of article 5190.6 of
the Texas Revised Civil Statutes as a waiver of immunity to suit for WDC and EDC. See
Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033, & 51.075 (Vernon 1999); Tex. Rev. Civ.
Stat. Ann. art. 5190.6, § 23(a)(9) (Vernon Supp. 2006).

A. Applicable Law 

 Governmental immunity protects against lawsuits for money damages to the extent
a municipality engages in the exercise of governmental functions. See Gen. Servs.
Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001); City of Tyler v. Likes,
962 S.W.2d 489, 501 (Tex. 1997); Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex.
1997). Nearly 160 years ago, the Texas Supreme Court first acknowledged the common
law rule that "no state can be sued in her own courts without her consent, and then only
in the manner indicated by that consent." Hosner v. DeYoung, 1 Tex. 764, 769 (1847). 
In the time since that initial pronouncement, the rule has become firmly established in both
common law and statutes and is now applied to the state's various governmental entities. 
See Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). 

 Governmental immunity has developed into two distinct forms: (1) immunity from
suit, which bars suit against a governmental entity altogether; and (2) immunity from
liability, which bars enforcement of a judgment against a governmental entity. Id. at 331;
Mo. Pac. R.R. Co. v. Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970). The
distinction between immunity from suit and immunity from liability is an important one. 
Even if a governmental entity has acknowledged liability on a claim, it cannot be sued
without the legislature's consent. Tex. DOT v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). 
Conversely, the legislature's consent to suit is insufficient to recover on a claim against a
governmental entity if immunity to liability has not been waived. Fed. Sign., 951 S.W.2d
at 405. 

 From this explanation, we can also observe another important distinction between
the two forms of immunity. Immunity from suit implicates a court's subject matter
jurisdiction, whereas immunity from liability does not. See Jones, 8 S.W.3d at 638. This
is because immunity from liability protects against a final judgment and not against the suit
itself. Tooke, 197 S.W.3d at 331. Consequently, the two types of immunity must be raised
in different ways. A plea to the jurisdiction is the appropriate procedural vehicle for
challenging a court's jurisdiction based on immunity to suit. See Jones, 8 S.W.3d at 638. 
In contrast, immunity to liability must be pled as an affirmative defense under rule 94. See
Tex. R. Civ. P. 94; Jones, 8 S.W.3d at 638. 

 Appellees argue that the foregoing principles of governmental immunity have no
bearing on this case because the allegations of their claims involve proprietary functions
rather than governmental functions. Before addressing this contention, we note that our
opinion will not address any issues of immunity to liability, as that issue cannot be properly
raised in a plea to the jurisdiction and accordingly has no place in an interlocutory appeal
from the denial of a plea to the jurisdiction. See Tex. R. Civ. P. 94; Jones, 8 S.W.3d at
638. 

 The proprietary-governmental dichotomy has been used to determine a
municipality's immunity from suit for tortious conduct. Tooke, 197 S.W.3d at 343. The
distinction has not been a clear one, but generally speaking, a municipality's proprietary
functions are those conducted "in its private capacity, for the benefit only of those within
its corporate limits, and not as an arm of the government," whereas its governmental
functions are "in the performance of purely governmental matters solely for the public
benefit." Id. (quoting Dilley v. City of Houston, 222 S.W.2d 992, 993 (Tex. 1949)). A
municipality is not immune from suit for torts committed in the performance of its
proprietary functions, as it is for torts committed in the performance of its governmental
functions. Id. The Texas Supreme Court has never held that this same distinction
determines whether immunity from suit is waived for breach of contract claims. Id. 
Nevertheless, the Texas Supreme Court has stated, "Contracts made by municipal
corporations in their proprietary capacity have been held to be governed by the same rules
as contracts between individuals." Gates v. City of Dallas, 704 S.W.2d 737, 738-39 (Tex.
1986). It has also stated that a city that contracts in its proprietary role is "clothed with the
same authority and subject to the same liabilities as a private citizen." Id. Based on these
statements, we proceed in our analysis with the assumption that the
proprietary-governmental dichotomy extends to breach of contract claims. 

B. Analysis 

1. Proprietary-Governmental Dichotomy

 The common thread between all of appellees' claims is a contention that appellants
cannot plan and develop a birding center on the property where Lakeview Park is located. 
The alleged wrongfulness of appellants' actions stem from contractual rights claimed by
appellees. According to their live petition, the City of Weslaco promised appellees that
they "would never be asked to leave Lakeview [Park], as long as they were able to care for
themselves." Because development of the birding center under appellants' current
proposal would necessarily involve evicting appellees from Lakeview Park, appellees have
sued to stop development of the birding center and to recover money damages. 

 Appellees contend that their lawsuit challenges proprietary functions and that there
is therefore no governmental immunity from suit. Their arguments are based largely on the
Fourth Court of Appeals' opinion in Schertz v. Parker and the list of governmental and
proprietary functions enumerated in section 101.0215 of the Texas Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215 (Vernon 2005);
Schertz v. Parker, 754 S.W.2d 336 (Tex. App.--San Antonio 1988, no writ).

 In Schertz, the court of appeals held that "the regulation and administration of the
mobile home park by the City . . . as authorized by the city ordinance was a proprietary
function." Schertz, 754 S.W.2d at 340. Appellees claim that the same result should follow
in this case. We disagree. 

 At the outset, we note that Schertz involved immunity from liability and not immunity
from suit. Id. at 339-41. We have already discussed the differences between the two
forms of immunity and have expressly limited our opinion to the issue of immunity from
suit, the only form of immunity which may be properly challenged on an interlocutory
appeal from the denial of a plea to the jurisdiction. See Jones, 8 S.W.3d at 638. The
distinction between the issues is critical in this case, especially because the analysis in
Schertz was based on the city's failure to carry the burden of "proving and submitting" the
defense of governmental immunity to liability. Schertz, 754 S.W.2d at 340-41. In contrast,
the burden in this case was on appellees to overcome immunity to suit by alleging
jurisdictional facts to demonstrate that their claims against appellants arose from
proprietary functions. See Jones, 8 S.W.3d at 638 (explaining that immunity to suit
implicates subject matter jurisdiction); Tex. Ass'n of Bus., 852 S.W.2d at 446 (explaining
that Texas law "requires the pleader to allege facts that affirmatively demonstrate the
court's jurisdiction to hear the cause"). 

 We are also mindful of the absence in Schertz of any reference or discussion of
section 101.0215 of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.0215. Although the Schertz court concluded that the city's
regulation of a mobile home park was proprietary and not governmental, that determination
seems to have been based largely on the conclusion that the city had placed on itself the
burden of regulating mobile home parks, as evidenced by city ordinances authorizing its
actions. The court reasoned as follows:

Liability will not be imposed upon a municipality if the event sued upon
occurs when the municipality is engaged in performance of those duties
which are imposed on all municipalities, without corporate consent, and
exclusively for public purposes. See Gates v. City of Dallas, 704 S.W.2d
737, 739 (Tex. 1987). This would not be true when the municipality imposes
upon itself a special duty or authority, as in the present case.


See Schertz, 754 S.W.2d at 340.

 We need not disagree with the reasoning in Schertz to hold that its precedent is
inapplicable to the case at bar. Having dealt strictly with the issue of immunity from liability,
Schertz provides no guidance on the issue of immunity from suit. Furthermore, the
opinion's exclusive reliance on common law principles to address the proprietary-governmental dichotomy is an approach of dubious validity given the Texas Supreme
Court's recent opinion in Tooke. In that case, the supreme court emphasized that "waiver
of governmental immunity involves policies best considered by the legislature." Tooke, 197
S.W.3d at 344. The supreme court also noted that it "could be argued that a city lacks
authority to waive its own immunity from suit by ordinance or charter." Id. Together, these
statements strongly indicate that the reasoning in Schertz should not be extended to the
issue of immunity to suit presented in this appeal.

 The Texas Constitution authorizes the legislature to "define for all purposes those
functions of a municipality that are to be considered governmental and those that are
proprietary, including reclassifying a function's classification assigned under prior statute
or common law." Id. at 343 (quoting Tex. Const. art. XI, § 13). Section 101.025 of the civil
practice and remedies code contains examples of governmental and proprietary functions. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215. Appellees point out that the list of
governmental functions does not include "operating a mobile home park." We agree with
appellees on this point, but note that neither does the list of proprietary functions.

 The list of governmental functions does include "community, neighborhood, or
senior citizen centers." Id. § 101.0215(a)(17). Although we do not conclude that the
functions in this case fit squarely within that classification, we do find it noteworthy that
appellees' live petition refers to Lakeview Park as a "retirement community," a description
which seems to fit at least partly within "community, neighborhood, or senior citizen
centers." Id. 

 We also find it noteworthy that appellees' "emergency motion for temporary
injunctive order" complained of actions by appellants that allegedly denied appellees
access to "common areas" in Lakeview Park, including the "Green Barn" and "Red Barn,"
which house recreational equipment, including pool tables, a shuffleboard table, a ping-pong table, and a loom for quilting. See Appellees' EMERGENCY Motion for
Temporary Injunctive Order or Order for Remand to Consider Interim Relief p. 4. 
The facilities also provide Lakeview Park residents with a common meeting area, a
community swimming pool, a laundry machine, and a full kitchen. Id. pp. 4-5. Appellees
claim that these "items" (with the exception of the swimming pool) "were purchased,
installed, and maintained by current and former residents of Lakeview [Park]." Id. p. 5. 
Regardless of this contention, there is no question that the City of Weslaco owns the
facilities. There is also no question that the facilities were made available as community
facilities for recreational purposes. This is especially significant because "recreational
facilities, including but not limited to swimming pools, beaches, and marinas" are listed as
governmental functions. See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(23).

 The civil practice and remedies code also specifies that "parking facilities" are
governmental functions. Id. § 101.0215(a)(25). Neither our independent research nor the
parties' briefs have yielded any prior precedent addressing whether a mobile home park
can be properly classified as a "parking facility" under the civil practice and remedies code. 
See id. We conclude that as a facility for parking mobile homes, Lakeview Park is at least
partly covered by the "parking facility" classification. See id. 

 Also included as governmental functions in the civil practice and remedies code are
"parks and zoos" and "zoning, planning, and plat approval." See id. § 101.0215(a)(13),
(29). Appellees contend that the birding center is not a park or a zoo, but they have
produced no precedent to support their contention. Even assuming that the birding center
could not be a park, we would still be faced with the question of whether it may be properly
considered as a "recreational facility." See id. § 101.0215(a)(23). Again, without holding
that any one of these classifications perfectly describes the functions in this case, we
conclude that the development of a birding center falls under the classifications of "parks
and zoos," "recreational facilities," and "zoning, planning, and plat approval." See id. §
101.0215(a)(13), (23), (29). 

 In sum, we have concluded that the functions at issue relate to "community,
neighborhood, or senior citizen centers," "recreational facilities, including but not limited to
swimming pools, beaches, and marinas," "parking facilities," "parks and zoos," and "zoning,
planning, and plat approval." See id. § 101.0215(a)(13), (17), (23), (25), (29). In holding
that this case involves governmental and not proprietary functions, we note that subsection
(c) of section 101.0215 states, "The proprietary functions of a municipality do not include
those governmental functions listed under Subsection (a)." See id. § 101.0215(c). Having
concluded that the functions at issue fall within five of the classifications of governmental
activities listed in subsection (a), we are precluded from holding that the activities are
proprietary. See id. 

 Appellees contend that this conclusion cannot follow because representatives of the
City of Weslaco admitted that the functions at issue in this case are not governmental. In
support of this contention, appellees offered the trial court the following deposition
testimony:


Attorney for Appellees: Would you agree that operating a mobile home
park is not a city function?


* * *


Representative: I agree. 


In addition, appellees relied on the following statement made by the mayor of the City of
Weslaco:

When the City of Weslaco purchased the Lakeview Mobile Home Park, the
City of Weslaco never intended to operate a mobile home park. Home-rule
cities have charters and laws that apply to them and operating a mobile
home park is not a city function. 


Based on this evidence, appellees argue that "the city itself has admitted that operation of
the park is not a governmental function." Brief of Appellees p. 16. 

 We construe the foregoing argument as one of waiver, which brings us back to
Tooke and the distinction between immunity to suit and immunity to liability. As discussed
above, immunity to suit involves a court's subject matter jurisdiction. See Jones, 8 S.W.3d
at 638. Subject matter jurisdiction cannot be waived. Tex. Ass'n of Bus., 852 S.W.2d at
446 ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal;
it may not be waived by the parties."). 

 Furthermore, in Tooke, the Texas Supreme Court stated that it "could be argued that
a city lacks authority to waive its own immunity from suit by ordinance or charter." Tooke,
197 S.W.3d at 344. Although that language may be construed as dicta in future opinions,
the same reasoning could be applied to the present case. If a municipality has only a
limited and questionable ability to waive its immunity to suit by formal promulgation of an
ordinance or charter, a municipality's representative, a fortiori, has an even less effective
ability to do so through informal speech or writings. Even this limited ability, however,
assumes that subject matter jurisdiction may be expanded through waiver by admission,
an assumption which runs contrary to long-standing precedent. See, e.g., Tex. Ass'n of
Bus., 852 S.W.2d at 446. 

 Finally, appellees contend that the activities in question must be proprietary because
Lakeview Park is located outside the city limits of the City of Weslaco. We disagree. If
anything, the location of the park indicates that the activities are governmental. After all,
a municipalities' proprietary functions must be "for the benefit only of those within its
corporate limits." Tooke, 197 S.W.3d at 343 (quoting Dilley, 222 S.W.2d at 993). The
parties agree that Lakeview Park is not within the City of Weslaco's corporate limits. It is
also clear from the allegations of the petition that appellees have reaped benefits from
appellants' ownership and operation of Lakeview Park. Given that appellees reside outside
appellants' corporate limits, we cannot conclude that "only those within" the City of
Weslaco's corporate limits benefit from appellants ownership and operation of Lakeview
Park. See id. Thus, we do not find the location of Lakeview Park to be a consideration
that militates in favor of classifying the functions as proprietary. 

 For these reasons, we conclude that governmental immunity to suit applies to the
causes of action alleged by appellees. 

2. Statutory Waiver of Immunity to Suit 

 As noted above, appellees also contend that immunity to suit was legislatively
waived as to the City of Weslaco by sections 51.013, 51.033, and 51.075 of the Texas
Local Government Code. See Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033, & 51.075. 
They further contend that immunity to suit was legislatively waived as to WDC and EDC
by section 23(a)(9) of article 5190.6. Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 23(a)(9).

a. Sections 51.013, 51.033, & 51.075

 In Tooke, the Texas Supreme Court held that "the words 'sue and be sued,'
standing alone, are if anything, unclear and ambiguous. The effect of similar clauses, like
'plead and be impleaded,' is indistinguishable, and therefore those clauses do not, by
themselves, waive immunity." Tooke, 197 S.W.3d at 342. This is the same language used
in sections 51.013, 51.033, and 51.075. See Tex. Loc. Gov't Code Ann. §§ 51.013,
51.033, & 51.075. Accordingly, we cannot conclude that those statutes have waived the
City of Weslaco's immunity to suit. 

b. Section 23(a)(9) of Article 5190.6 

 A similar result follows under section 23(a)(9) of article 5190.6. Tex. Rev. Civ. Stat.
Ann. art. 5190.6, § 23(a)(9). That statute uses the language "sue and be sued, complain
and defend, in its corporate name." Id. In Tooke, the Texas Supreme Court cited a similar
provision in article 5190.6 and stated that it has "nothing to do with immunity at all." Tooke,
197 S.W.3d at 341-42 n.74 (citing Tex. Rev. Civ. Stat. Ann. art. 5190.6, § 5 (D)(I) (stating
that an industrial development corporation "may sue and be sued")). Following Tooke, we
conclude that no immunity to suit was waived by section 23(a)(9) of article 5190.6.

III. Conclusion

 The activities complained of in this lawsuit are governmental functions and are
therefore protected by governmental immunity. Appellees have failed to demonstrate that
immunity to suit has been waived. We therefore conclude that the trial court lacks subject
matter jurisdiction to hear the claims alleged against appellants. We reverse the order
denying appellants' pleas to the jurisdiction and render a judgment dismissing appellees'
claims. 




 


 DORI CONTRERAS GARZA,

 Justice


 

Opinion delivered and filed this 

the 14th day of December, 2006.

 
1. WDC and EDC claim entitlement to governmental immunity based on Texas Revised Civil
Statute Annotated article 5190.6 (Vernon Supp. 2006), commonly known as the Development Corporation
Act of 1979. The Act expressly extends governmental immunity to economic development corporations. 
See id. § 4B(m) ("[T]he corporation is a governmental unit and its actions are governmental functions.");
Purdin v. Copperas Cove Econ. Dev. Corp., 143 S.W.3d 290, 295 (Tex. App.--Waco 2004, pet. dism'd);
Rayl v. Borger Economic Dev. Corp., 963 S.W.2d 109 (Tex. App.--Eastland 1998, no pet.). Appellees
contend that governmental immunity does not extend to WDC and EDC. Their contentions in this regard
are focused largely on the inapplicability of section 4A(j) of article 5190.6. See Tex. Rev. Civ. Stat. Ann.
art. 5190.6 (Vernon Supp. 2006). They also argue that WDC does not enjoy governmental immunity
because it was created before article 5190.6 was enacted. We disagree with these contentions. Section
4B(m) grants WDC and EDC governmental immunity. We therefore do not need to address appellees'
contentions that section 4A is inapplicable, as the two sections of article 5190.6 contain functionally
equivalent terms on governmental immunity. Furthermore, we have no basis for limiting the scope of
article 5190.6 to corporations created after its enactment and accordingly decline to do so. Having
concluded that governmental immunity extends to WDC and EDC, we now turn to the parties' respective
arguments on whether the trial court erred in denying the pleas to the jurisdiction filed by the City of
Weslaco, WDC, and EDC.